**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| SCRUM ALLIANCE, INC., <br> 11796 Gray Way <br> Westminster, Colorado  80020 <br><br>        Plaintiff, <br><br>           v. <br><br><br> EDUSYS SERVICES PVT. LIMITED, <br> 410 N. 44th Street, Suite 240 <br> Phoenix, Arizona  85008 <br><br> VMEDU, INC., <br> c/o CSC-Lawyers Incorporating <br>        Service Company <br> 7 St. Paul Street, Suite 1660 <br> Baltimore, Maryland  21202 <br><br> and <br><br> TRIDIBESH SATPATHY, <br> 410 N. 44th Street, Suite 240 <br> Phoenix, Arizona  85008 <br><br>        Defendants. | CIVIL ACTION NO. |

**COMPLAINT FOR DAMAGES AND**
**INJUNCTIVE RELIEF; JURY TRIAL DEMAND**

Scrum Alliance, Inc., by and through its undersigned attorneys, files this civil action against Edusys Services Pvt. Limited, VMEdu, Inc., and Tridibesh Satpathy (the "Defendants") as follows:

**THE PARTIES**

1. Plaintiff Scrum Alliance, Inc. ("Scrum Alliance") is a Colorado corporation with its principal place of business at

11796 Gray Way, Westminster, Colorado 80020.

2.    Upon information and belief, Edusys Services Pvt. Limited ("Edusys") is a limited company from the Republic of India, with principal places of business located at Suite 240, 410 N 44th Street, Phoenix, Arizona 85008, and 4539 Metropolitan Ct., Frederick, Maryland 21704.

3.    Upon information and belief, VMEdu, Inc. ("VMEdu") is a Maryland corporation with a principal places of business located at Suite 240, 410 N 44th Street, Phoenix, Arizona 85008, and 4539 Metropolitan Ct., Frederick, Maryland 21704.

4.    Upon information and belief, Tridibesh Satpathy ("Mr. Satpathy") is a citizen of the Republic of India who resides in Bangalore, India and conducts the businesses of Edusys and VMEdu at both Suite 240, 410 N 44th Street, Phoenix, Arizona 85008, and 4539 Metropolitan Ct., Frederick, Maryland 21704.

5.    Upon information and belief, the Defendants individually and collectively conduct business under the name SCRUMstudy, whose URL is www.scrumstudy.com.

## JURISDICTION AND VENUE

6.    This Court has original jurisdiction in this matter based on 28 U.S.C. § 1331 in that the claims arise under the laws of the United States.  Specifically, this Court has subject matter jurisdiction over the counts relating to federal trademark infringement, false designation of origin, and cybersquatting pursuant to 15 U.S.C. §§ 1114 and 1125 and 28 U.S.C. §§ 1331, 1332 and 1338.

7.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because Scrum Alliance's state law and common law claims are so related to federal claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

8.    This Court has personal jurisdiction over Defendants because, *inter alia*, Defendants:  transact business within and have availed itself of this forum; engage in a persistent course of conduct in this forum; expect, or should reasonably expect, their acts to have legal consequences in this forum; and maintain substantial, systematic and continuous minimum contacts in this forum.

9.    Venue is proper in the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1391(b)(2) in

that a substantial part of the events that give rise to the claims occurred in this District, and a substantial part of the property that is the subject of this action is situated in this District.

## BACKGROUND

## The Business and Marks of Scrum Alliance, Inc.

10.   Scrum Alliance is a world leader in education, instruction, training and mentoring in a product and software development framework known as "Scrum."  Scrum Alliance provides resources and information related to Scrum, organizes training sessions, and certifies individuals wishing to become qualified under Scrum Alliance's certification programs.

11.   Scrum Alliance is the owner of a number of federally registered certification and service marks, including but not limited to SCRUM ALLIANCE®, CERTIFIED SCRUMMASTER®, CERTIFIED SCRUM PRODUCT OWNER®, CERTIFIED SCRUM TRAINER®, CERTIFIED SCRUM DEVELOPER®, SCRUM ALLIANCE REP®, and CSP®.  See Certificates of Registration attached hereto as Exhibit A.

12.   Scrum Alliance is the applicant for a number of federal certification mark applications, including but not limited to CST (Serial No. 86/130,418), CSD (Serial No. 86/130,410), CSPO (Serial No. 86/130,415), and CSM (Serial No. 86/130,413). See

Trademark Status & Document Retrieval (TSDR) printouts attached
hereto as Exhibit B.

13.   As a result of Scrum Alliance's longstanding, exclusive
and widespread promotion and use of these marks, and adherence to
strict standards of quality control, the marks have acquired
significant goodwill and have come to be strongly associated with
Plaintiff's education, training, mentoring and instruction in the
fields of product development, product design, project management
and software development, as well as related association and
membership services in those fields.

**Defendants' Unlawful Acts Related to Registration and Use of the
<scrumalliancetraining.com> Domain Name and "Scrum" Marks**

14.   In or around November, 2012, Plaintiff corresponded
with Defendants concerning Defendants' use of Plaintiff's mark,
CERTIFIED SCRUMMASTER, without the authorization or consent of
Plaintiff.

15.   In December, 2012, Plaintiff and the Defendants came to
an express understanding, as set forth in email communications
between their respective counsels. Specifically, Defendants
agreed to modify the CERTIFIED SCRUMMASTER mark to SCRUM MASTER
CERTIFIED, and further covenanted not to use Plaintiff's mark,
CSM, or the words "Certified" or "Certification" before "Scrum
Master."

16.   In or around late 2012 or sometime in 2013, the Defendants, without the authorization or consent of Plaintiff, began using the following additional marks in connection with their services, each of which closely resembles Plaintiff's marks shown in parentheses:

- SCT (Plaintiff's mark: CST)

- SCRUMSTUDY CERTIFIED TRAINER (Plaintiff's mark: CERTIFIED SCRUM TRAINER)

- SDC (Plaintiff's mark: CSD)

- SCRUM DEVELOPER CERTIFIED (Plaintiff's mark: CERTIFIED SCRUM DEVELOPER)

- SPOC (Plaintiff's mark: CSPO)

- SCRUM PRODUCT OWNER CERTIFIED (Plaintiff's mark: CERTIFIED SCRUM PRODUCT OWNER)

- SMC (Plaintiff's mark: CSM)

- SCRUM MASTER CERTIFIED (Plaintiff's mark: CERTIFIED SCRUMMASTER)

- REP (Plaintiff's mark: SCRUM ALLIANCE REP)

Defendants' above-listed marks are hereinafter called "Defendants' Marks."

17.   VMedu filed the following U.S. service mark applications with the USPTO:

- Serial No. 86/085,803 for SCT in connection with "Education services, namely, training, mentoring, and tutoring by providing classes, seminars, and workshops in the field of Project Management using Scrum and Agile methodologies; accreditation and certification of

individuals who have completed mandated courses and a prescribed curriculum in the fields of Scrum and Agile project management" in International Class 41, filed on October 8, 2013 with an alleged first use date of August 5, 2013;

- Serial No. 86/085,781 for SDC in connection with "Testing to determine professional competency, namely, testing and evaluating professionals involved in the field of Scrum and Agile Project Management, and Product Development to determine their level of knowledge and competency" in International Class 35, filed on October 8, 2013 with an alleged first use date of August 5, 2013;

- Serial No. 86/067,672 for SPOC in connection with "Testing to determine professional competency, namely, testing and evaluating professionals involved in the field of Scrum and Agile Project Management, and Product Development to determine their level of knowledge and competency" in International Class 35, filed on September 18, 2013 with an alleged first use date of February 27, 2013; and

- Serial No. 86/067,634 for SMC in connection with "Testing to determine professional competency, namely, testing and evaluating professionals involved in the field of Scrum and Agile Project Management, and Product Development to determine their level of knowledge and competency" in International Class 35, filed on September 18, 2013 with an alleged first use date of December 21, 2012.

VMedu's four above-listed U.S. service mark applications are under examination by the USPTO.

18. The Defendants, without authorization or consent of Plaintiff, display stock imagery in a YouTube video promoting their services that is virtually identical to an image displayed on Plaintiff's website. Compare

http://www.youtube.com/watch?v=8fSIaAQe3Bs#t=12 with

http://www.scrumalliance.org/community.

19.   On or about September 8, 2013, months after the express understanding described in Paragraph 15, Defendants, in the name of Mr. Satpathy and Edusys, registered the domain name: <scrumalliancetraining.com>.  See WHOIS information attached as Exhibit C.

20.   After acquiring the pirated domain name, Defendants linked the domain name to a "parking page".  See screenshot from <scrumalliancetraining.com> attached as Exhibit D.  As a result of Defendants' use of the pirated domain name, actual or prospective customers who typed "scrum alliance training" into a search engine may have been directed to <scrumalliancetraining.com>, rather than to Scrum Alliance's own website.

21.   The pirated <scrumalliancetraining.com> domain name is confusingly similar to the Scrum Alliance® mark.

22.   Moreover, the parties' respective services are closely related.  Edusys, like Scrum Alliance, promotes and provides information regarding the offering of training and education services.

23.   Edusys's website (www.edusysglobal.com) describes its

business as follows: "We conduct courses which are recognized by globally reputed institutions like Project Management Institute, Pennsylvania, USA; Human Resources Certification Institute, Alexandria, Virginia, USA, APMG International, Buckinghamshire, UK etc. Edusys plays a key role in creating industry hallmarks like knowledge enrichment, skill sharpening, and competitive edge through online courses and tests that spans a vast spectrum of conventional and emerging domains of learning and work. Our robust learning management and back office systems have given us tremendous scalability in terms of our ability to offer better courses and cater to various domains of professional education where there is a lack of good quality content and study methodology." See screenshot from <edusysglobal.com> attached as Exhibit E.

24.   As evidenced by the nearly identical nature of the domain name and the Scrum Alliance mark, and the similarity of the respective services, Edusys was fully aware of Scrum Alliance's prior, exclusive rights in the mark at the time it registered the infringing domain name.

25.   Further, as evidenced by Mr. Satpathy's communication with Plaintiff in November 2012 described in Paragraph 14, Mr. Satpathy was fully aware of Scrum Alliance's prior, exclusive rights in the Scrum Alliance mark at the time he registered the

infringing domain name.

26.   On October 1, 2013, attorneys for Scrum Alliance contacted Edusys's attorneys by email and demanded that Edusys immediately transfer the <scrumalliancetraining.com> domain name to Scrum Alliance.  <u>See</u> Exhibit F.

27.   On October 2, 2013, Edusys's attorney responded to Scrum Alliance's demand with a proposal to sell the infringing domain name for $2,500.00.  <u>See</u> Exhibit G.  Edusys's attorney specifically stated: "I have discussed this matter with my client.  Even though 'training' as a term distinguishes the domain name from any trademark of Scrum Alliance that my client is aware of, my client is willing to undertake the transfer you request.  My client has incurred out of pocket expense with respect to this, and expects to incur more in connection with the transfer.  Edusys Services Pvt Limited therefore requests payment by Scrum Alliance, Inc. of $2,500 in reimbursement of its out-of-pocket expenses." <u>See</u> <u>id.</u>

28.   This demand for $2,500, which far exceeds the costs incurred in registering the domain name, serves as further evidence of Edusys's bad faith.

29.   On October 16, 2013, Edusys's attorneys represented to Scrum Alliance's attorneys that Edusys had relinquished ownership

of the <scrumalliancetraining.com> domain name.

30.   Prior to October 16, 2013, Edusys's attorneys did not notify Scrum Alliance or its counsel regarding the relinquishment of the <scrumalliancetraining.com> domain name.

31.   On November 27, 2013, following telephone discussions in October 2013 or November 2013 between counsels, attorneys for Scrum Alliance contacted Edusys's attorneys by email to object to Defendants' continuing use of Defendants' Marks and stock imagery.

32.   Upon information or belief, Mr. Satpathy and Edusys either held or prevented access to the <scrumalliancetraining.com> domain name from the date of registration of the <scrumalliancetraining.com> domain name, September 8, 2013, until sometime in October, 2013.

33.   On January 30, 2014 and February 4, 2014, Defendants continued to infringe Scrum Alliance's registered CERTIFIED SCRUM TRAINER and CERTIFIED SCRUM MASTER marks. Specifically, Defendants' agent, Mark Pearson, posted the following unsolicited comment on two blog sites in order to promote Defendants' business: "Scrum is undeniably the winner of the agile method wars. Thanks to the scrumstudy.com's vast network of **Certified Scrum Trainers** and **Certified Scrum Master** courses" (emphasis added). See Exhibit H for screenshots of comments, available at

http://agilecomplexificationinverter.blogspot.com/2010/11/dog-grooming-exercise.html and

http://drunkenpm.blogspot.com/2014/01/interview-with-david-j-anderson.html.

34.   Defendants' unlawful use of "CERTIFIED SCRUM TRAINER" and "CERTIFIED SCRUMMASTER" was in direct breach of the express understanding described in Paragraph 15 and has caused, and will cause, confusion in the minds of Plaintiff's existing and potential consumers.

35.   Plaintiff is informed and believes, and on that basis alleges, that Defendants' use of Defendants' Marks is an attempt to capitalize and trade off on the recognition, reputation, and goodwill of Scrum Alliance's certification and service marks.

36.   Given the confusing similarity of the marks, reasonable ordinary consumers will mistakenly believe that Defendants' services are owned, operated, sponsored or approved by Scrum Alliance.

37.   Defendants' unauthorized conduct constitutes federal trademark infringement and false designation of origin, and causes Scrum Alliance to suffer irreparable injuries for which it has no adequate remedy at law.

38.   All such conduct by the Defendants was and continues to be in bad faith, willful, deliberate and in knowing violation of

the law.

<u>Count I</u>

**Violation of the Federal Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(D)**

39.  The allegations of paragraphs 1 through 39 are incorporated herein.

40.  The pirated domain name, <scrumalliancetraining.com>, is confusingly similar to, if not identical to, Plaintiff's SCRUM ALLIANCE® mark.

41.  Defendants are not known as Scrum Alliance and have no rights in the SCRUM ALLIANCE® mark or any confusingly similar mark.

42.  Defendants registered and used the domain name, <scrumalliancetraining.com>, with a bad faith intent to profit thereby.

43.  Defendants' bad faith is evidenced, inter alia, by: registration of the confusingly similar domain name and linking it to a parking page on the web; the refusal by Defendants to transfer the domain name to Scrum Alliance; and the demand for monetary compensation that far exceeds the cost of domain name registration.

44.  Defendants' unlawful conduct constitutes cybersquatting in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

45.   Defendants' deliberate and wrongful acts of cybersquatting have caused great injury and damage to Scrum Alliance and Scrum Alliance's goodwill, which injury and damage cannot be adequately quantified.

46.   As a result of Defendants' conduct, Plaintiff has suffered and continues to suffer irreparable damage.

47.   Plaintiff is entitled to preliminary and permanent injunctive relief.

<u>**Count II**</u>
**Trademark Infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114**

48.   The allegations of paragraphs 1 through 48 are incorporated herein.

49.   Scrum Alliance is the owner of the SCRUM ALLIANCE® mark (Reg. Nos. 3548753, 4017468 & 3622159), the CERTIFIED SCRUMMASTER mark (Reg. No. 3738535), the CERTIFIED SCRUM PRODUCT OWNER mark (Reg. No. 3545767), the CERTIFIED SCRUM TRAINER mark (Reg. No. 3510571), the CERTIFIED SCRUM DEVELOPER mark (Reg. No. 3855133), the SCRUM ALLIANCE REP mark (Reg. Nos. 4154523 & 4154524), and the CSP mark (Reg. No. 4198087) (collectively, the "Scrum Alliance Marks").

50.   Defendants have knowingly and intentionally used, and continue to use, Defendants' Marks, which are confusingly similar

to Plaintiff's federally registered marks, without the consent of
Plaintiff.

51.   VMedu filed U.S. service mark applications with the
USPTO for the SCT, SDC, SPOC, and SMC marks, which are
confusingly similar to Plaintiff's federal registrations for CST,
CSD, CSPO, and CSM, respectively.

52.   This conduct was undertaken with full recognition and
knowledge of Plaintiff's ownership of the federally registered
marks.

53.   Defendants' service mark applications for, and use in
commerce of, Defendants' Marks is likely to cause confusion,
mistake, and deception among consumers and others regarding the
source of the services offered by Defendants.

54.   Defendants' actions constitute infringement of
Plaintiff's federally registered marks in violation of 15 U.S.C.
§ 1114.

55.   As a result of Defendants' conduct, Plaintiff has
suffered and continues to suffer irreparable damage.

56.   Plaintiff has no adequate remedy at law and is
therefore entitled to preliminary and permanent injunctive
relief.

57.  Defendants' actions are unlawful and have damaged Plaintiff in an amount not yet calculated.

## Count III

### Unfair Competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

58.  The allegations of paragraphs 1 through 58 are incorporated herein.

59.  Defendants' actions violate Lanham Act section 43(a), 15 U.S.C. § 1125(a), in that Defendants' use in interstate commerce of Defendants' Marks, which are confusingly similar to the Scrum Alliance Marks, constitutes unfair competition and false designation of origin.

60.  As a result of Defendants' conduct, Plaintiff has suffered and continues to suffer irreparable damage.

61.  Plaintiff has no adequate remedy at law and is therefore entitled to preliminary and permanent injunctive relief.

62.  Defendants' actions are unlawful and have damaged Plaintiff in an amount not yet calculated.

## Count IV

### Common Law Trademark Infringement

63.  The allegations of paragraphs 1 through 63 are incorporated herein.

64.   Scrum Alliance owns and enjoys in the State of Maryland and throughout the United States common law trademark rights in the Scrum Alliance Marks, as well as its unregistered and applied-for marks, including but not limited to CST, CSD, CSPO, and CSM.

65.   On information and belief, Defendants' acts have been committed knowingly, in bad faith, and with the intent to cause confusion, mistake, and deception among consumers.

66.   Defendants' acts constitute infringement of Scrum Alliance's common law rights in the Scrum Alliance Marks and the CST, CSD, CSPO, and CSM marks.

67.   As a result of Defendants' conduct, Plaintiff has suffered and continues to suffer irreparable damage.

68.   Plaintiff has no adequate remedy at law and is therefore entitled to preliminary and permanent injunctive relief.

69.   Defendants' actions are unlawful and have damaged Plaintiff in an amount not yet calculated.

## Count V
### Unfair Competition under Maryland Code, Commercial Law, Section 13-301(1)

70.   The allegations of paragraphs 1 through 70 are incorporated herein.

71.   Defendants' use of Defendants' Marks is a false or misleading visual description or other representation which has the capacity, tendency, or effect of misleading or deceiving consumers, including those in this District.

72.   Defendants' acts constitute unfair competition and an unfair or deceptive trade practice in violation of Maryland Code, Commercial Law, Section 13-301(1).

73.   As a result of Defendants' conduct, Plaintiff has suffered and continues to suffer irreparable damage.

74.   On information and belief, Defendants' acts were done knowingly and in bad faith.

75.   Plaintiff has no adequate remedy at law and is therefore entitled to preliminary and permanent injunctive relief.

76.   Defendants' actions are unlawful and have damaged Plaintiff in an amount not yet calculated.

### Count VI
### Breach of Express Contract

77.   The allegations of paragraphs 1 through 77 are incorporated herein.

78.   The express understanding described in Paragraph 15 that Plaintiff and Defendants entered in December, 2012, reflects Defendants' recognition of Plaintiff's exclusive ownership of the

"CERTIFIED SCRUMMASTER" mark and Defendants' agreement to modify their "CERTIFIED SCRUMMASTER" mark to "SCRUM MASTER CERTIFIED, and not to use Plaintiff's mark, CSM, or the words "Certified" or "Certification" before "Scrum Master.""

79.   Defendants breached their understanding with Plaintiff by unveiling the scheme described in Paragraph 16 through which Defendants began using the SCT, SCRUMSTUDY CERTIFIED TRAINER, SDC, SCRUM DEVELOPER CERTIFIED, SPOC, SCRUM PRODUCT OWNER CERTIFIED, SMC, SCRUM MASTER CERTIFIED, and REP marks, each of which closely resembles Plaintiff's marks.

80.   Defendants further breached their understanding with Plaintiff when Defendants' agent, Mark Pearson, posted the comment described in Paragraph 34 on two blog sites on January 30, 2014 and February 4, 2014, in order to promote Defendants' business in which he used Plaintiff's registered CERTIFIED SCRUM TRAINER and CERTIFIED SCRUMMASTER marks in connection with Defendants' services.

81.   Plaintiff has performed all its obligations under the understanding of December, 2012, with Defendants.

82.   As a result of Defendants' conduct, Plaintiff has suffered and continues to suffer irreparable damage.

83.   Plaintiff has no adequate remedy at law and is therefore entitled to preliminary and permanent injunctive relief.

84.   Defendants' actions are unlawful and have damaged Plaintiff in an amount not yet calculated.

## Count VII

### Breach of Quasi-Contract

85.   The allegations of paragraphs 1 through 85 are incorporated herein.

86.   In an effort to avoid a prolonged legal dispute between Plaintiff and Defendants, Defendants promised to Plaintiff that they would modify their "CERTIFIED SCRUMMASTER" mark to "SCRUM MASTER CERTIFIED, and not to use Plaintiff's mark, CSM, or the words "Certified" or "Certification" before "Scrum Master."

87.   In recognition of Defendants' promise, Plaintiff refrained from taking further legal action related to Defendants' unauthorized use of Plaintiff's "CERTIFIED SCRUMMASTER" mark.

88.   Defendants were on notice through communication between the parties' counsel that their use of the "CERTIFIED SCRUMMASTER" mark infringed Plaintiff's registered "CERTIFIED SCRUMMASTER" mark.

89.   Defendants would be unjustly enriched if they were allowed to retain the benefit earned through unauthorized use of Plaintiff's mark.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Scrum Alliance respectfully requests that this Court grant the following relief against Defendants:

A.    Judgment be entered in favor of Scrum Alliance and against Defendants;

B.    Defendants pay damages incurred by Scrum Alliance as a result of their unlawful acts;

C.    Defendants pay statutory damages in the amount of not less than $1,000 and not more than $100,000 pursuant to 15 U.S.C. § 1117(d);

D.    An order voiding the understanding set forth in Paragraph 15, to the extent not terminated by Defendants' breach or otherwise;

E.    Defendants, and any officers, directors, agents, servants, employees, representatives, successors, assigns, attorneys, licensees, distributors and all persons in active concert or participation with Defendants, be enjoined from directly or indirectly:

i.    using the SCRUM ALLIANCE, CST, CERTIFIED SCRUM TRAINER, CSD, CERTIFIED SCRUM DEVELOPER, CSPO, CERTIFIED SCRUM PRODUCT OWNER, CSM, CERTIFIED SCRUMMASTER, and SCRUM ALLIANCE REP marks, or any

confusingly similar designations, alone or in combination with other words, as a trademark, service mark, domain name, or trade name to identify, market, distribute, advertise, promote, to offer for sale or to provide any goods or services, including each and every one of the following: SCRUM MASTER CERTIFIED, SCT, SCRUMSTUDY CERTIFIED TRAINER, SDC, SCRUM DEVELOPER CERTIFIED, SPOC, SCRUM PRODUCT OWNER CERTIFIED, SMC, and REP;

ii.  otherwise infringing the SCRUM ALLIANCE, CST, CERTIFIED SCRUM TRAINER, CSD, CERTIFIED SCRUM DEVELOPER, CSPO, CERTIFIED SCRUM PRODUCT OWNER, CSM, CERTIFIED SCRUMMASTER, and SCRUM ALLIANCE REP marks;

iii. continuing acts of false designation of origin or unfair trade practices, or doing any acts that may cause Defendants' goods or services to be mistaken for, confused with or passed off as Scrum Alliance's goods or services;

iv.  applying for or attempting to register with any governmental entity, including but not limited to the USPTO, any trademark or service mark consisting in whole or in part of the SCRUM ALLIANCE, CST, CERTIFIED SCRUM TRAINER, CSD, CERTIFIED SCRUM DEVELOPER, CSPO,

CERTIFIED SCRUM PRODUCT OWNER, CSM, CERTIFIED SCRUMMASTER, and SCRUM ALLIANCE REP marks;

v.   interfering with Scrum Alliance's use and registration of its domain names, <scrumalliance.org> and <scrumalliance.com>.

vi.  interfering with Scrum Alliance's use of the SCRUM ALLIANCE, CST, CERTIFIED SCRUM TRAINER, CSD, CERTIFIED SCRUM DEVELOPER, CSPO, CERTIFIED SCRUM PRODUCT OWNER, CSM, CERTIFIED SCRUMMASTER, and SCRUM ALLIANCE REP marks, as well as Scrum Alliance's related federal trademark registrations.

F.   Defendants be directed to file with this Court and to serve on Scrum Alliance, within ten (10) days after issuance of an injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

G.   Defendants be required to remove the SCRUM ALLIANCE, CST, CERTIFIED SCRUM TRAINER, CSD, CERTIFIED SCRUM DEVELOPER, CSPO, CERTIFIED SCRUM PRODUCT OWNER, CSM, CERTIFIED SCRUMMASTER, and SCRUM ALLIANCE REP marks and any confusingly similar names or marks from its website(s), HTML code, search engine query terms and any other electronic communications hosts, links and devices;

H.    Defendants be ordered to transfer to Scrum Alliance any domain name consisting, in whole or in part, of the SCRUM ALLIANCE, CST, CERTIFIED SCRUM TRAINER, CSD, CERTIFIED SCRUM DEVELOPER, CSPO, CERTIFIED SCRUM PRODUCT OWNER, CSM, CERTIFIED SCRUMMASTER, and SCRUM ALLIANCE REP marks;

I.    VMedu be ordered to file a Request for Express Abandonment of Application Serial Nos. 86/085,803, 86/085,781, 86/067,672, and 86/067,634 with the USPTO, and to file with the Court and serve on Scrum Alliance within thirty days a report confirming that the Request for Express Abandonment was filed with the USPTO;

J.    Defendants be ordered to pay costs of this action, including attorney's fees, incurred by Scrum Alliance, pursuant to Lanham Act section 35, 15 U.S.C. § 1117; and

K.    Such other and further relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims that may be tried before a jury.

Respectfully submitted,

/s/ BROOKE T. ILEY

**BLANK ROME LLP**
Brooke T. Iley (#23136)
Watergate
600 New Hampshire Ave, NW
Washington, DC 20037
(202) 772-5816/5850 (telephone)
(202) 572-1416/1450 (facsimile)

David M. Perry (*pro hac vice* pending)
Dennis P. McCooe (*pro hac vice* pending)
One Logan Square
Philadelphia, PA  19103
(215) 569-5767/5580 (telephone)
(215) 832-5767/5580 (facsimile)

Attorneys for Plaintiff,
Scrum Alliance, Inc.